NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0883n.06
Filed: December 7, 2006

No. 05-4648

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA , | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MICHAEL D. CAMISCIONE, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |

**BEFORE:** **KEITH and COLE, Circuit Judges; and STEEH, District Judge.**[*]

**DAMON J. KEITH, Circuit Judge**. Defendant-Appellee Michael D. Camiscione ("Camiscione") pled guilty to possession of child pornography, in violation of 18 U.S.C. § 2252 (a)(4) and (b)(2). The Sentencing Guidelines recommended a sentencing range of 27 to 33 months. After considering the now-advisory Sentencing Guidelines, the district court sentenced Camiscione into the custody of the United States Marshal's Office for the remainder of the day followed by supervised release for a period of three years. In light of the district court's failure to address several 18 U.S.C. § 3553(a) factors that we believe to be pertinent, we **VACATE** the district court's sentence and **REMAND** for resentencing.

### I. BACKGROUND

During the course of a national and international investigation of internet child pornography,

---

[*]The Honorable George Caram Steeh, United States District Court for the Eastern District of Michigan, sitting by designation.

investigators discovered that Camiscione was in possession of child pornography. The evidence indicated that between May and October 1999, Camiscione used his credit card 22 times to purchase memberships to child pornography websites. The purchases included 30-day subscriptions to sites such as "The XXX Files," "Youngest Teens Hardcore," and "Children of God." On October 9, 2002, through a pretextual phone call, investigators confirmed that Camiscione had internet capabilities at his home and that he was the primary user.

On October 22, 2002, a federal search warrant was issued, and Camiscione's residence was searched. As a result of the search, 42 images of child pornography were found on Camiscione's computer and 20 more images were found on floppy discs belonging to him. Some of these images depicted prepubescent, children under 12 years of age. One image was of a child approximately four years old. During the search, Camiscione waived his rights and provided written and oral statements admitting to purchasing subscriptions and downloading child pornography.

After the search and on his own free will, Camiscione sought treatment to help determine the cause of his improper conduct. In early 2003, Camiscione consulted Dr. James Pallas of the Center for Marital and Sexual Health. Under Dr. Pallas' supervision, Camiscione underwent a full evaluation and was diagnosed with Sexual Compulsivity (Sexual Disorder, Not Otherwise Specified (NOS)); Probable Attention Deficit Hyperactivity Disorder, Combined Type; Depression NOS; Anxiety NOS; and Borderline Personality Disorder with Passive Aggressive and Dependent Features. "Dr. Pallas recommended psychiatric follow up and 'behavioral intervention by a counselor who should utilize a concrete and problem-focused approach to psychotherapy.'" (J.A. 96). Adhering to the recommendations of Dr. Pallas, Camiscione sought counseling from Dr. Yogesh K. Desai, a

psychiatrist, and Larry Borka, a therapist, at the Rehabilitation Center in Mansfield, Ohio. Over the course of six months, Camiscione received treatment.

On December 7, 2004, an information was filed against Camiscione in the United States District Court for the Northern District of Ohio, Eastern Division. The one-count information charged Camiscione with knowingly possessing visual depictions that had been transported in interstate commerce depicting persons under the age of eighteen engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252 (a)(4) and (b)(2). On December 9, 2004, a plea agreement was filed, and on December 21, 2004, Camiscione pled guilty. Sentencing was set for March 23, 2005.

Prior to sentencing, Camiscione sought further psychological assessment from Dr. Robert L. Smith, a clinical psychologist and addiction specialist. Similar to Dr. Pallas, Dr. Smith diagnosed Camiscione with Sexual Disorder NOS and Attention Deficit/Hyperactivity Disorder – Combined Type. Dr. Smith also diagnosed Camiscione with Identity Problem, Major Depression – single episode, and Seizure Disorder. As a result of these disorders, Dr. Smith concluded that Camiscione experienced reduced mental capacity and was unable to control his behavior at the time of the offense even though he knew it was wrong. Significantly, Dr. Smith opined that these impairments make Camiscione highly susceptible to being influenced by others, and thus making him "vulnerable to being victimized in a prison environment." (J.A. 111).

Camiscione filed Dr. Smith's evaluation under seal. This prompted the district court to postpone sentencing and to utilize the initial sentencing date of March 23, 2005 as a pretrial conference. During the conference, the court expressed reservations about Dr. Smith's report and

requested more information about Camiscione. The district court also expressed concern about Camiscione's mental condition and his safety if incarcerated. In response to the district court's unreadiness, Camiscione filed a motion for psychological evaluation at the government's expense which identified a psychiatrist. The government objected to the selected psychiatrist and recommended Camiscione be evaluated by the Federal Correctional Institute in Butner, North Carolina, a federal facility designed for such evaluations. Additionally, and in response to the district court's concern over Camiscione's safety if incarcerated, the government offered a letter from Dr. Andres Hernandez, Director of the Sex Offense Program at the Federal Correctional Institute in Butner, North Carolina, stating that "incidents of violence among sex offenders in the federal system is extremely low." (J.A. 34).

On June 10, 2005, the district court granted Camiscione's motion for psychological evaluation, and on July 5, 2005, Camiscione was admitted to the Federal Medical Center ("FMC") in Butner, North Carolina. The district court directed that Camiscione be evaluated regarding his susceptibility to coercion, his possible diminished intellectual functioning, his ability to function as an independent adult, and any evidence that Camiscione is pedophilic and may act on those impulses. On September 12, 2005, after completing a forensic evaluation of Camiscione, the FMC issued its findings to the district court. Contrary to the diagnosis of Dr. Pallas and the report of Dr. Smith, the FMC deemed Camiscione to be suffering from pedophilia and not Sexual Disorder NOS. In particular, the FMC concluded that Camiscione is of average intelligence, with no indication of diminished intellectual functioning, is capable of functioning as an independent adult, and is not unduly susceptible to coercion. The FMC added that the prior diagnosis of Camiscione "appear[s]

to be based primarily on results of psychologic testing with limited clinical correlation." (J.A. 101).

Notwithstanding its findings, however, the FMC recommended that Camiscione continue to "participate in ongoing psychologic treatment for behavioral therapies to address pedophilia." *Id*. at 103.

On November 1, 2005, the district court sentenced Camiscione. Pursuant to the plea agreement, the district court determined that Camiscione had a base offense level of 15, to which six points would be added (two points because the material involved prepubescent minors, two points because ten or more items were possessed, and two points because a computer was used), and that three points would be deducted for his acceptance of responsibility. The district court calculated Camiscione's offense level to be 18 and his criminal history category to be I. Thus, the guidelines called for a sentence range of 27-33 months.

Before determining Camiscione's sentence, the district court thoroughly reviewed the psychological reports of Dr. Smith and the FMC. The district court also entertained arguments from both counsel for the defense and the government. After considering the evidence, the district court noted several factors. First, the district court noted Dr. Smith's findings that Camiscione's "reduced mental capacity resulted in his inability to control his behavior at the time of the offense, even though he was aware that it was wrong" and that "Camiscione's impairments place him at risk of being unduly influenced and or [sic] controlled by others which would leave him vulnerable to be victimized in a prison environment." (J.A. 63). Second, the district court noted that Camiscione experienced epileptic seizures and expressed concerns about his inability to receive medication in prison. Third, the district court commented that five years had passed since Camiscione had viewed

the pornographic images and there was no evidence that Camiscione had molested any children either before or after the search of his home.

After considering all of these reasons, the district court concluded, "I just don't think that a long prison term is the right response for this particular defendant." (J.A. 68). Accordingly, the district court sentenced Camiscione into the custody of the United States Marshal's Office for the remainder of the day followed by supervised release for a period of three years. The district court also waived the imposition of a fine and ordered Camiscione to perform 180 hours of community service. Noting the government's objection to the sentence, the district court explained,

> I really am not inclined to sentence this man to prison when I know some of the things that will happen to him. That's not going to help him get better. And I would prefer to let him live a reasonable normal life. If he doesn't get better, he's going to be back before me for violation of some condition of his supervised release, and maybe at that time I would feel okay, you know, now you go to jail, but with the reports such as the one that we have hear, I just don't feel that prison is the appropriate way to handle this defendant.

*Id*. at 72. Having already objected to the sentence during the hearing, the government now appeals the district court's sentence as unreasonable.

## II. ANALYSIS

"We review sentences for reasonableness." *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). "'[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of [18 U.S.C.] section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task.'" *Id*. (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1(6th Cir. 2006)) (first alteration in original). Therefore, "[o]nce a

district court has settled on a sentence that it deems to be reasonable, it then becomes [our] duty to review that sentence to ensure its reasonableness with an eye toward those same § 3553(a)[1] factors." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005).

In reviewing challenges to a sentence, "we have distinguished between the procedural and substantive reasonableness of sentences." *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). "A sentence may be procedurally unreasonable if the 'district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *Collington*, 461 F.3d at 808 (quoting *Webb*, 403 F.3d at 383). On the other hand, "[a] sentence may be considered substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Id*. (quoting *Webb*, 403 F.3d at 385) (first alteration not in original).

---

[1]In pertinent part, § 3553(a) states:
> that the court, in determining the particular sentence to be imposed, shall consider; (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2)(A) - (D) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, the government contends that the district court's deviation from the advisory

sentencing guidelines was unreasonable. Specifically, the government argues that the district court's

sentencing of Camiscione into the custody of the United States Marshal's Office for the remainder

of the day followed by supervised release for a period of three years was improper in light of the 27-

33 months recommended sentence under the sentencing guidelines. The government further asserts

that the district court failed to properly consider the factors articulated under 18 U.S.C. § 3553(a).

In light of the government's appeal, we must now determine if the district court's sentence was

procedurally and substantively reasonable.

## A. PROCEDURAL REASONABLENESS

The district court's sentence was procedurally reasonable. "Although the district court may

not have mentioned all of the [§ 3553(a)] factors . . . explicitly, and although explicit mention of

those factors may facilitate review, this court has never required the 'ritual incantation' of the factors

to affirm a sentence." *United States v. Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006) (quoting

*United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)) (alteration in original). The record,

however, must sufficiently reflect the district court's considerations. *United States v. McBride*, 434

F.3d 470, 474 (6th Cir. 2006) (citing *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005)).

Here, at the outset, the district court considered and properly calculated the applicable

guideline range by determining that the guidelines called for a sentence between 27-33 months.

Without specifically identifying each factor, the district court then reflected and took into account

several considerations listed in § 3553(a). In compliance with § 3553(a)(1), the district court

considered the nature of the offense when it commented, "I realize that's supporting the people who

manufacture the films also and videos and whatever . . . is the criminal activity." (J.A. 60). Camiscione's history and characteristics were also considered through the review of psychological reports which fully detailed his background. The district court also noted that there was no evidence indicating that Camiscione had ever molested any children and that there was a low risk of him doing so in the future. Likewise, § 3553(a)(2)(D) was discussed when the district court noted that Camiscione suffered from epileptic seizures and needed medication to aid his condition.

This record reflects consideration of some § 3553(a) factors. Thus, given the district court's noted consideration, we are satisfied that Camiscione's sentence is procedurally reasonable. We now turn to the substantively reasonable analysis.

## B. SUBSTANTIVE REASONABLENESS

The district court varied downward from the sentencing guideline range of 27-33 months to one afternoon in custody of the United States Marshal's Office followed by three years of supervised release. Although such a variance is not impermissible, the district court's failure to address several factors that we believe to be pertinent necessitates our finding that Camiscione's sentence was not substantively reasonable.

In *Collington*, this Court held that "[a] sentence may be considered substantively unreasonable when the district court . . . 'fail[s] to consider pertinent § 3553(a).'" 461 F.3d at 808 (quoting *Webb*, 403 F.3d at 385). Under a substantive reasonableness review, this Court has also "credit[ed] sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness." *Williams*, 436 F.3d at 708. However, "'a sentence outside of the Guidelines range – either higher or lower – is [not] presumptively *un*reasonable. It is not.' Rather, our reasonableness

review is in light of the 3553(a) factors which the district court felt justified such a variance."

*Collington*, 461 F.3d at 808 (quoting *Foreman*, 436 F.3d at 644) (internal citations omitted).

Therefore, "when the district court independently chooses to deviate from the advisory guidelines

range (whether above or below it), we apply a form of proportionality review: 'the farther the judge's

sentence departs from the guidelines sentence . . . the more compelling the justification based on

factors in section 3553(a)' must be." *Davis*, 458 F.3d at 496 (alteration in original). Here, the

district court's failure to address several pertinent factors does not allow us to determine that

Camiscione's sentence was justified.

First, a note on *Davis* is warranted. In *Davis*, the district court sentenced the defendant, a 70-

year-old male convicted of two counts of bank fraud, to one day of confinement with three years of

supervised release where the sentencing guidelines range was 30-37 months. *Id.* at 494-95. In

sentencing the defendant, the district court thoroughly considered and faithfully attempted to apply

each of the § 3553(a) factors. *Id.* at 495. In particular, the district court based its sentence on the

defendant's age; the 14-year gap between the commission of the crime and sentencing; its conclusion

that the public was in no danger from the defendant; its belief that any sentence would be sufficient

to deter the defendant from committing further crimes; its specific finding that the defendant had

been, in effect, rehabilitated by the passage of time; and the unlikelihood of sentencing disparities

between persons similarly suited since very few 70-year-old people are brought before the court 14

years after the fact. *Id.* at 494-95.

After reviewing the district court's sentence and reasoning, the majority in *Davis* concluded

that the sentence was substantively unreasonable because "the district court gave little, if any,

discernible weight to the guidelines range and its explanations for deviating from that range fail to justify the magnitude of the variance." *Id*. at 499. In other words, the *Davis* majority squarely disagreed with the district court's explanation as to why the one day sentence was justified. It explained that time interval was not a factor considered under § 3553(a), and even to the extent that it could be considered, "the passage of time by itself [did not] justif[y such] a variance." *Id*. at 498. Furthermore, the majority found that while the district court properly exercised its discretion in considering the defendant's age, his age of 70 does not warrant a one-day sentence given the defendant's lack of restitution for the loss caused, his failure to accept responsibility, and his failure to show remorse for the crime. *Id*.

Despite the district court's faithful attempt to apply each of the § 3553(a) factors and its explanation as to why the variance was justified, the *Davis* majority also found that the district court failed to identify any evidence to support the findings it used to justify the downward variance. *Id*. at 498-99. Moreover, the majority noted that the district court failed to explain how a one-day sentence would promote respect for the law, how the passage of time in effect rehabilitated the defendant, and how the sentence would serve as a societal deterrence. *Id*. "Perhaps most problematically [for the majority], the sentence represent[ed] the most extreme variance possible, leaving no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve." *Id*. at 499.[2]

---

[2]To identify "more worthy defendants" deserving extreme variances, the *Davis* majority suggested a criteria which included "those [defendants] who paid restitution; those who accepted responsibility for the crime and showed remorse for committing it; those who used the time between the commission of the crime and sentencing to engage in other acts demonstrating rehabilitation; and, with respect to elderly defendants, those who had become infirm in the

Here, unlike the majority in *Davis*, we are not disagreeing with the district court's application of the § 3553(a) factors it considered. Nor are we saying the district court failed to identify evidence supporting its findings. Rather, we simply conclude that the district court's sentence is unreasonable because it failed to address several factors we believe to be pertinent. It is true that after considering Camiscione's history and characteristics, the seriousness of the crime, and Camiscione's need for medical treatment, the district court "did not think that a long prison term is the response for this particular defendant." (J.A. 68). Notably, however, the district court neglected to consider and articulate how its sentence – an afternoon with the United States Marshal's Office followed by three years of supervised release – deterred Camiscione from committing future crimes, *see* § 3553(a)(2)(B); protected the public from further crimes, *see* § 3553(a)(2)(C); and how this sentence avoided sentencing disparities, *see* § 3553(a)(6). If these factors were in fact considered by the district court, the record is devoid of such reasoning.

We emphasize that "a reasonable sentence based on consideration of the factors does not require a rote listing," and our holding today does not uproot this well-established standard. *Collington*, 461 F.3d at 809 (citing *United States v. Vonner*, 452 F.3d 560, (6th Cir. 2006)). Nor does our holding heighten the requirements of the district court. Nevertheless, we believe that the circumstances presented in this case – particularly, the possibility that Camiscione may re-offend – merit the district court's consideration of how a one-day sentence deters Camiscione from future crimes and protects the public from further crimes.

It is important to note that the district court rendered Camiscione's sentence before this Court

intervening years." *Davis*, 458 F.3d at 499.

issued its decision in *Davis* or our subsequent holding in *Collington*. Therefore, on remand, the

district court will have an opportunity to address these several additional factors in deciding on the

extent of the deviation, if any, that is justified in this case.

### III. CONCLUSION

For the aforementioned reasons, we **VACATE** the district court's sentence and **REMAND**

for resentencing.